# Exhibit B

## SETTLEMENT AGREEMENT

NER Construction Management Corporation ("NER") and the Massachusetts Laborers' Benefit Funds ("Funds") (collectively, the "Parties") agree as follows:

WHEREAS, NER is signatory to various collective bargaining agreements ("CBAs") with the Massachusetts & Northern New England Laborers' District Council (the "Union"), pursuant to which NER is obligated to remit contributions to the Funds for hours worked by its laborer employees;

WHEREAS, NER did not make all required contributions for its laborer employees for the time period 2014 to 2022;

WHEREAS, the U.S. Department of Justice has indicted NER's former President, Frank Loconte ("Loconte"), in connection with a payroll scheme of underreporting hours to the Funds in order to avoid paying taxes and fringe benefit contributions to the Funds (the "Criminal Action");

WHEREAS, the Criminal Action seeks remedies including restitution to the Funds for the unpaid contributions;

WHEREAS, NER has filed a civil lawsuit against Loconte for damages to the corporation in connection with the factual allegations at issue in the Criminal Action, NER Construction Management Corporation v. Frank Loconte and Maselan & Jones, P.C., (the "Civil Action");

WHEREAS, NER has a new board of directors and wishes to resolve the delinquency to the Funds;

WHEREAS, NER has provided documents to the Funds in order for the Funds to calculate the amount owed;

WHEREAS, the Funds have determined that NER underreported approximately 21,600 hours for its Laborer employees for the ERISA six-year statutory period of 2016-2022;

WHEREAS, the Funds have determined that principal contributions on the unreported hours amounts to $583,201.56;

WHEREAS, the CBA and ERISA provide for the assessment of interest, liquidated damages, and attorney's fees and costs of collections;

1

WHEREAS, the Funds have determined, and NER has agreed, that the following amounts are due from NER:

| | |
|---|---|
| Contributions | $583,201.56 |
| Interest | $291,680.34 |
| Liquidated damages | $291,680.34 |
| Fees | $86,166.95 |
| **TOTAL** | **$1,252,729.19** |

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the Parties agree as follows:

1. NER shall pay the Funds $1,252,729.19, plus interest at a rate of 10% per annum, according to the terms set forth below.

   a. NER shall remit monthly installment payments of $25,000 per month for a period of fifty (50) consecutive months.
   b. After making fifty (50) equal payments of $25,000, NER shall make a final payment of the remaining principal balance of $2,729.19, plus the interest that has accrued during the term of the payment plan. Such interest shall be calculated after NER has submitted its fiftieth (50th) installment payment and shall be calculated at a rate of 10% per annum.
   c. NER shall remit the first payment within five (5) business days of execution of this Settlement Agreement.
   d. NER shall remit each subsequent payment on or before the first (1st) day of each month.
   e. NER shall make payments under this Settlement Agreement by check made payable to the Massachusetts Laborers' Benefit Funds, and sent to the Funds by UPS, certified mail, or Federal Express to the following address: Massachusetts Laborers' Benefit Funds, c/o Auditing Director, P.O. Box 1501, 1400 District Avenue, Suite 200, Burlington, MA 01803.

2. The Funds may review NER's books and records periodically to determine whether NER has the ability to increase the amount of its monthly installment payments or otherwise accelerate payment. NER agrees to provide the Funds with documents necessary to conduct this review on a quarterly basis beginning July 1, 2023, including without limitation the following documents: balance sheets, accounts receivable statements, state and federal tax documents, balance sheets, check registers, account statements, bank records, payroll records, and any other documents deemed necessary for review by the Funds' Auditors. If there is a dispute between the Parties regarding NER's ability to pay, it may be resolved by binding arbitration by an arbitrator from AAA or JAMs, selected by the Funds.

3. This Settlement Agreement is secured by the property and assets set forth in Schedule A of the Promissory Note executed on 5-19-23 The Promissory Note and all terms therein are incorporated here by reference.

4. In addition to the property and assets described above, NER agrees that the Funds shall enjoy a priority position and have a first lien on (1) any recovery received from the Civil Action or any mediation or settlement thereof, and (2) any funds or tax credits received by NER as a result of the Employee Retention Tax Credit. For the sake of clarity, NER agrees that any funds or amounts received from these sources shall first be applied to satisfy in full NER's remaining debt to the Funds. No payment or distribution of any amounts from these sources shall be made to NER, its principals, or anyone else unless and until the Funds' claim is satisfied in full. NER shall promptly notify the Funds upon receipt of funds from either of these sources.

5. The Parties agree that any restitution payments received from Loconte as a result of the Criminal Action shall first be applied to principal contributions owed for the period 2014 and 2015.[1] Any amounts received from Loconte over and above the amount owed for 2014 and 2015 shall be applied to the balance owed under this Settlement Agreement and shall offset the total amount owed by NER.

6. NER agrees to require its employees who are members of a Local under the jurisdiction of the Union to attend a half day training seminar provided by the Funds and/or the Union which shall cover employees' rights and responsibilities with respect to employee benefits. The Funds shall schedule the training with NER at a mutually agreeable time and place. The Funds shall have sole discretion over the content and attendees of the training. The training seminar shall be a term of employment and employees shall receive wages and benefits for the time spent in attendance.

7. In the event NER breaches the terms set forth in this Settlement Agreement, all outstanding amounts owed this Settlement Agreement will become immediately due and owing, as well as interest at the rate of 10% per annum, and reasonable legal fees and costs of collection incurred by the Funds to enforce the terms of this Settlement Agreement. In the event of breach, the Funds reserve the right to seek any and all damages available to them at law and in equity to the extent permitted by law. NER agrees that the Funds are entitled to enforce this Settlement Agreement in federal court as a contract under Section 301 of the National Labor Relations Act, 29 U.S.C. Section 185, and under Section 515 of ERISA, 29 U.S.C. Section 1145.

8. Nothing in this Settlement Agreement shall be construed as a waiver of any right, claim, or cause of action that the Funds may have against Loconte individually. If the Funds deem that legal action against Loconte is necessary or advisable, NER agrees to cooperate with the Funds in good faith.

9. Nothing in this Settlement Agreement shall be construed to lessen or otherwise alter any priority position the Funds enjoy vis-à-vis other creditors of NER under any law of the United States or the Commonwealth of Massachusetts, including, without limitation, any priority the Funds are entitled to under 11 U.S.C. Section 507(a) whereby certain contributions to qualified pension and welfare benefit plans are accorded priority.

---

[1] The amount of principal contributions owed for the period 2014 and 2015 is yet to be determined.

3

10. For the sake of clarity, this Settlement Agreement does not excuse or waive any obligation NER has to the Funds to pay contributions or other amounts due under a CBA, ERISA, or otherwise (if any), beyond those amounts set forth herein.

11. Either Party may enforce this Settlement Agreement in the United States District Court for the District of Massachusetts.

12. This Settlement Agreement contains the entire understanding and all the terms and conditions agreed upon by the Parties with respect to the subject matters contained in this Settlement Agreement. No other agreement, oral or otherwise, will be deemed to exist or to bind any of the Parties to this Settlement Agreement. The Parties to this Settlement Agreement agree that any modification of the Settlement Agreement must be made in writing and signed by all Parties.

13. If any portion or provision of this Settlement Agreement is held invalid or unenforceable by any court of competent jurisdiction, the remainder of the Settlement Agreement will be considered severable, will not be affected, and will remain in full force and effect. The language of all parts of this Settlement Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any Party.

14. This Settlement Agreement may be executed in counterparts, each of which shall, for all purposes, be deemed an original, and all such counterparts, taken together, shall constitute one and the same Settlement Agreement, even though all of the Parties hereto may not have executed the same counterpart of this Settlement Agreement. An executed copy of this Settlement Agreement shall be treated as an original for all purposes.

15. The digital version of this Settlement Agreement shall be considered an original version of the instrument, coextensive with the hardcopy version.

Each of the persons signing on behalf of any of the Parties hereby warrants and represents that s/he has been duly and legally authorized to execute this Settlement Agreement on behalf of such Party, with the effect of binding all of the Parties to this Settlement Agreement. All Parties warrant and represent that the person or persons signing below have full authority and power to bind their respective parties to this Settlement Agreement.

**NER Construction Management Corporation**

By: _____/s/_____  Date: 5-19-2023
Harry Wieman, President

**Massachusetts Laborers' Benefit Funds**

By: _____  Date: _____
Nathan P. Goldstein, Executive Director

5